UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOS
EASTERN DIVISION

| | |
|---|---|
| **MATTHEW TUCCIARONE,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Case No.: |
| ) | |
| **UNITED AIRLINES, INC.,** ) | |
| ) | |
|     **Defendant.** ) | |
| _____/ | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Comes now Plaintiff, MATTHEW TUCCIARONE ("Plaintiff" or "Tucciarone"), and files his Complaint against Defendant UNITED AIRLINES, INC. ("Defendant" or "United"), and in support of this Complaint, states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages, pursuant to the Family and Medical Leave Act of 1996, 29 U.S.C. § 2601, *et seq*. ("FMLA") and Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA") to redress Defendant's unlawful employment practices against Plaintiff including Defendant's unlawful discrimination and harassment of Plaintiff because of his disability, retaliation against Plaintiff for engaging in protected activity, Defendant's interference with Plaintiff's lawful exercise of his rights under the FMLA, retaliation against Plaintiff for exercising his rights under the FMLA and ADA, and intentional infliction of emotional distress, leading to his unlawful termination.

1

## VENUE AND JURISDICTION

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's rights under the FMLA and the ADA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

5. Plaintiff, Tucciarone, is a citizen of the United States and was at all times material a resident of Chicago, Illinois residing in Cook County, Illinois.

6. Defendant, UNITED, is an Illinois Foreign Corporation with its principal place of business in Chicago, Illinois.

7. At all times relevant Plaintiff worked for Defendant at its O'Hare International Airport location, 10000 W O'Hare Ave., Chicago, Illinois 60666.

8. Defendant United, is an employer as defined by the laws under which this action arises.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to filing this action.

10. On January 2, 2019, Plaintiff dual-filed a claim with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), against

2

Defendant, satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), based on disability and retaliation.

11. Plaintiff's EEOC charge was filed within three hundred days after the alleged unlawful employment practices occurred.

12. On June 12, 2019, the EEOC issued a Dismissal and Notice of Rights.

13. This Complaint was filed within ninety days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Rights.

## FACTUAL BACKGROUND

14. Plaintiff is a disabled male.

15. Plaintiff worked for Defendant as a Flight Attendant and was able to perform all essential functions of his position with or without reasonable accommodations.

16. Plaintiff was diagnosed with depression, anxiety, and Human Immunodeficiency Virus ("HIV") during his tenure with Defendant. Plaintiff is prescribed various anxiety and HIV medications which he must take on a daily basis.

17. Due to his disabilities, Plaintiff applied and was approved for intermittent leave under the FMLA.

18. Defendant targeted and discriminated against Plaintiff because of his disabilities and use of protected leave under the FMLA.

19. Following Defendant's policies, when Plaintiff required the use one of his Intermittent FMLA days, he would call into Defendant's "Sick List," notify Defendant of his absence, and request to be placed on the "Sick List FML."

20. On multiple occasions Defendant would interfere with Plaintiff's FMLA leave when it would incorrectly code Plaintiff's absence following his call into Defendant's Sick List

causing Plaintiff to accumulate attendance points. Defendant's repeated interference discouraged Plaintiff from freely taking his FMLA leave.

21. Plaintiff raised his concerns about the FMLA interference to Defendant. Defendant simply advised Plaintiff to call back to its Sick List and have the agent answering the phone correct the mis-coding. Plaintiff attempted to correct Defendant's incorrect coding multiple times, sometimes with success and sometimes without, again discouraging Plaintiff from freely using his FMLA leave.

22. After Plaintiff called in indicating he required FMLA leave, Defendant's Sick List agents then notified Defendant's Scheduling Department of Plaintiff's FMLA absence such that Plaintiff would not be placed on the schedule to work a flight until he notified Defendant he was able to return to work.

23. To further interfere with Plaintiff's FMLA leave, Defendant's Scheduling Department would contact Plaintiff's direct supervisor to lament that Plaintiff had taken an FMLA day, falsely implying that Plaintiff was misusing or abusing his FMLA.

24. In addition to working as a Flight Attendant, at times, Plaintiff assisted Defendant with creating safety and informational videos.

25. While on a flight from Chicago, Illinois to Houston, Texas to work on a "Turbulence" video project for Defendant, Plaintiff was due to take his daily prescribed medications. As such, Plaintiff began to take his medication (three pills including Tivicay and Discovey for HIV and Lamictal for anxiety), out of their respective bottles. At the same time, the passenger seated next to Plaintiff accidentally spilled a cup of ice-cold water all over Plaintiff's lap.

26. Shocked by the ice-cold water flooding his lap, Plaintiff jumped up to go to the lavatory to dry off. In his haste, Plaintiff left the medications on his tray table.

27. When Plaintiff returned to his seat, he was met by Malinda (last name unknown), a Flight Attendant. Malinda handed Plaintiff the three pills from his tray table and Plaintiff's other personal belongings. She gruffly scolded Plaintiff and immediately gossiped with the other Flight Attendants about what happened. Defendant's extreme and outrageous actions caused Plaintiff's anxiety to skyrocket.

28. Upon landing in Houston, Texas, Defendant directed Plaintiff to go straight to his hotel room and attend a conference call to discuss what happened on the flight.

29. Once Plaintiff reached his hotel room, he joined a conference call with Sandra Ingram, Safety and Support Manager where Ms. Ingram questioned Plaintiff about what happened on the flight. Plaintiff explained the situation and specifically that Malinda had handled Plaintiff's HIV medication without his permission.

30. Only after notifying Defendant that the incident on the flight involved Plaintiff's HIV medications was Plaintiff removed from the Turbulence video project.

31. Ms. Ingram further informed Plaintiff that Defendant was opening an investigation into what happened on the flight.

32. During Defendant's investigation Plaintiff was interrogated about the specific medications he was attempting to take while on the above-mentioned flight. In response to Defendant's questioning, Plaintiff again notified Defendant the medications were prescribed for HIV and anxiety. Defendant's attitude towards Plaintiff immediately shifted and Defendant further interrogated Plaintiff regarding his use of FMLA.

33. Defendant asked Plaintiff if he had FMLA leave, how many days a month did he use it, was it intermittent, and other questions for no reason other than to harass and discriminate against Plaintiff.

34. Even more egregious, Defendant stripped Plaintiff of his credentials, preventing Plaintiff from being able to move through Transportation Safety Administration ("TSA") screening and flying back to Chicago without great delay and difficulty causing an exacerbation of Plaintiff's anxiety.

35. Due to Plaintiff's engagement in protected activity and after learning of Plaintiff's HIV and anxiety diagnoses, Defendant terminated Plaintiff citing "performance" as pretext.

36. Plaintiff has suffered damages as a result of Defendant's actions.

**Count I: Disability Based Discrimination in Violation of the ADA**

37. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-36 above.

38. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

39. Defendant is prohibited under the ADA from discriminating against Plaintiff because of his disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

40. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on his disability.

41. Defendant intentionally discriminated against Plaintiff on the basis of his disability.

42. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost

benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

43. Defendant's unlawful conduct in violation of the ADA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

### Count II: Retaliation in Violation of the ADA

44. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-36 above.

45. Plaintiff engaged in protected activity under the ADA on more than one occasion while employed by Defendant.

46. Defendant engaged in intentional retaliation against Plaintiff for his participation in protected activity, specifically her repeated reports regarding the discrimination and hostile work environment she was experiencing.

47. Defendant's conduct violated the ADA. 46. Defendant intentionally retaliated against Plaintiff for engaging in protected activity under the ADA by terminating his employment.

48. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

49. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

50. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### Count III: Interference in Violation of the FMLA

51. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-36 above.

52. Plaintiff exercised or attempted to exercise his rights under the FMLA.

53. Defendant interfered with Plaintiff's lawful exercise of his FMLA rights.

54. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

55. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which Plaintiff is entitled to legal relief.

### Count IV: Retaliation in Violation of the FMLA

56. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-36 above.

57. Defendant retaliated against Plaintiff for exercising or attempting to exercise his FMLA rights.

58. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

59. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which Plaintiff is entitled to legal relief.

### Count V: Intentional Infliction of Emotional Distress

60. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-36 above.

61. Defendant engaged in deliberate conduct when it gossiped about Plaintiff's medications he attempted to take during the above-mentioned flight, when it interrogated him

about his medications, medical conditions, and use of FMLA leave, and when it stripped him of his TSA credentials without warning or reason.

62. Defendant's conduct was extreme and outrageous.

63. Defendant's extreme and outrageous conduct caused Plaintiff to suffer severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a.) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b.) Grant Plaintiff his costs and an award of reasonable attorneys' fees (including expert fees); and

c.) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:
*/s/ Gary Martoccio*
Gary Martoccio
Illinois Attorney Registration No. 6313431
Abby Salzer
Florida Bar No. 0591475
**Spielberger Law Group**
111 W. Jackson, Suite 1700
Chicago, IL 60604
T: (800) 965-1570
F: (866) 580-7499
Gary.Martoccio@spielbergerlawgroup.com
Abby.Salzer@spielbergerlawgroup.com